COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Clements

WILLIAM RICHARD ALLEN, JR.

v.      Record No. 0476-20-2

PRINCE EDWARD COUNTY
  DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 6, 2020

FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
J. William Watson, Jr., Judge

(Michael J. Friedman; Elder & Watkins, P.C., on brief), for
appellant. Appellant submitting on brief.

(Kemper M. Beasley, III; Ashley Ailsworth Sterling, Guardian *ad
litem* for the minor children, on brief), for appellee. Appellee and
Guardian *ad litem* submitting on brief.

William Richard Allen, Jr. (father) appeals the circuit court orders terminating his parental

rights to his three children. Father argues that the circuit court erred by finding that termination of

his parental rights was in the children's best interests and that he "had been unable or unwilling

within a reasonable period of time not to exceed 12 months from the date of placement in foster care

to remedy substantially the conditions which led to or required continuation of his children's

placement in foster care, notwithstanding the rehabilitative efforts of the agencies involved." Upon

reviewing the record and briefs of the parties, we conclude that the circuit court did not err.

Accordingly, we affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Father and Crystal Stokes (mother) are the biological parents to the three children who are the subject of this appeal.[2] In 2018, the Prince Edward County Department of Social Services (the Department) became involved with the family after they had relocated to Prince Edward County from Amelia County, where they had been involved in a child protective services investigation. On August 7, 2018, one of the children needed medical treatment. After becoming angry, father left the children with a babysitter at a local hospital and returned to his motel room. The hospital contacted the Department because there was no parent available to consent to medical treatment. The Department called mother, while police officers went to the motel where father was staying and asked him to return to the hospital. Mother and father entered into a safety plan with the Department and agreed to place the children temporarily with a family friend.

When the family friend was no longer able to care for the children, the parents met with the Department and signed another safety plan allowing the children to live temporarily with

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother voluntarily terminated her parental rights to the children at the beginning of the circuit court hearing.

father's cousins. After visiting with the children, father refused to return the children to his cousins, so on October 1, 2018, the Department filed a petition seeking emergency removal of the children. At the time of the removal, the children were six, eight, and nine years old. The Prince Edward County Juvenile and Domestic Relations District Court (the JDR court) entered a preliminary removal order and subsequently adjudicated that the children were abused or neglected.

The Department required father to obtain housing and employment and participate in substance abuse services and a psychological evaluation. Father also had to maintain contact with the Department and participate in visitations with the children. Father participated in an initial substance abuse evaluation and "some follow-up appointments," but the program ultimately discharged him for non-compliance because he "failed to engage or make significant progress." Between November 2018 and March 2019, father regularly attended the visitations and was "meaningfully engage[d] with the children." Thereafter, he stopped visiting and did not appear for scheduled visitations.

After March 2019, the Department "lost contact with [father] for a significant amount of time," and later determined that he had been incarcerated "multiple times." In the fall of 2019, father was a patient in "a rehab type of hospital," but was discharged for violating a rule of the facility. At that point, father did not have stable housing or employment, and he had not visited with the children in months. On October 30, 2019, the JDR court terminated father's parental rights to the children under Code § 16.1-283(B). Father appealed the JDR court's rulings.

After the JDR court terminated his parental rights and father was released from incarceration, father met with the Department to review the requirements necessary to reunite with his children. The Department indicated that it would assist him with obtaining services and referred him to several resources, but father never followed up. In December 2019, father was

arrested and incarcerated on a felony charge of possession of a Schedule I/II controlled substance.

On January 27, 2020, the parties appeared before the circuit court. The Department presented evidence that father had been incarcerated multiple times while the children were in foster care and never had consistent, stable housing. After receiving assistance from the Department, father obtained a job, which he held "for probably a month or two." Father initially participated in a few substance abuse services, but he did not complete them and was discharged from the program. Father acknowledged that in July 2019, he was "found . . . in a bathroom with a schedule one schedule two substance," which resulted in him being arrested in December 2019. Father also regularly attended visitations for the first few months, but after March 2019, he did not maintain contact with the Department. The foster father testified that the children's last telephone call with father was in March 2019, and thereafter, they have been unable to reach him.

The foster father testified that when the children entered foster care, the children were "defiant" and argumentative. While in foster care, the children's behaviors had improved "tremendous[ly]." The foster father described them as being polite and obedient, although they occasionally acted out or had a "meltdown."

Father admitted that after the Department removed the children in October 2018, he "fell in a deep, deep hole," and he started using heroin, quit his job, and lost his house. Father stated that he went to "a few rehabs" for substance abuse treatment. Father explained that after the JDR court terminated his parental rights, he met with the Department when he was released from incarceration in November 2019, but then he was incarcerated again in December 2019 on felony drug charges and unable to follow up with the suggested services. He admitted that he had not been in a position to care for the children and that he would not be available to care for them

- 4 -

until he "[got] out of this mess" he was facing. Father testified that upon his release from incarceration, he planned to move to Petersburg to live and work with a friend. He hoped to save enough money for his own residence. Father also admitted that he had had a drug problem and indicated that upon his release, he would "probably" go to Narcotics Anonymous (NA) for help.

After hearing all the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(B). On March 3, 2020, the circuit court entered its orders memorializing its rulings. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Father argues on appeal that the evidence was insufficient to support the termination of his parental rights under Code § 16.1-283(C)(2); however, the circuit court terminated father's parental rights under Code § 16.1-283(B), not subsection (C)(2). "[E]ach subsection, although similar in nature, is written as a distinct and grammatically independent provision of the statute. Accordingly, it is clear that Code § 16.1-283(B) and (C)(2) set forth individual bases upon which a petitioner may seek to terminate residual parental rights." City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 563 (2003); see also Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 269 (2005). Accordingly, father's failure to challenge the circuit court's

decision to terminate his parental rights under subsection (B) renders moot his argument that the evidence was insufficient to terminate his parental rights under subsection (C)(2). See Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (termination of parental rights upheld under one subsection of Code § 16.1-283 forecloses the need to consider termination under alternative subsections); see also Castillo, 68 Va. App. at 574 n.9.

Moreover, contrary to father's arguments, the evidence supported the circuit court's determination that termination of father's parental rights was in the best interests of the children. "In its capacity as factfinder, . . . the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Toms, 46 Va. App. at 266 (quoting Farley v. Farley, 9 Va. App. 326, 328 (1990)).

The circuit court found that father had "abused and [was] addicted to dangerous drugs to the extent that proper parental ability ha[d] been seriously impaired . . . ." Father acknowledged that when the children entered foster care, he "fell in a deep, deep hole." Father was incarcerated multiple times while the children were in foster care, and at the time of the circuit court hearing, he was awaiting trial for a felony drug charge. He did not have stable housing or employment; he had not followed through with substance abuse treatment and did not participate in a psychological evaluation. Father was not in a position to assume custody of the children.

At the time of the circuit court hearing, the children had been in foster care for approximately fifteen months, but they had not been in father's custody for approximately seventeen months. The foster father described the "tremendous" improvements that the children had made behaviorally and academically while in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc.

<u>Servs.</u>, 10 Va. App. 535, 540 (1990)).  Considering the totality of the evidence, the circuit court did not err in finding that it was in the children's best interests to terminate father's parental rights.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>